UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HERITAGE PROPERTIES, INC.                                                PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:17-CV-637-DPJ-FKB

IRONSHORE SPECIALTY INSURANCE                            DEFENDANTS
COMPANY, ET AL.

ORDER

Defendants ask the Court to dismiss this breach-of-contract case under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has stated a plausible claim for breach of the duty of good faith and fair dealing, Defendants' Motion to Dismiss [11] is denied in part without prejudice. The motion is otherwise granted for the reasons that follow.

I.      Facts and Procedural History

Plaintiff Heritage Properties, Inc. ("Heritage") manages several multi-family residential properties, including one owned by Carleton Holdings, LLC ("Carleton"), in Hinds County, Mississippi. At all relevant times, Heritage was insured under a commercial general liability policy issued by Defendant Ironshore Specialty Insurance Company ("Ironshore").

On August 22, 2016, Kate Speed, a tenant of the complex owned by Carleton and managed by Heritage, sued both entities. She alleged that she "was exposed to mold and hazardous substances and conditions on the subject premises that proximately caused her emotional and bodily injury." Underlying Compl. [11-1] ¶ 7. Upon receipt of the lawsuit, Heritage placed its insurance agent on notice of the claim, which notified the broker, which in turn notified Defendant RSG Underwriting Managers, LLC/WKFC Underwriting Managers ("WKFC") on August 31, 2016. "WKFC acknowledged receipt of the claim on behalf of . . .

Ironshore . . . and then assigned the claim administration to [D]efendant[] York Risk Services Group ('York')." Compl. [1] ¶ 12.

On September 6, 2016, York sent an Acknowledgement of Assignment to Heritage and WKFC. "Thereafter, neither Heritage, nor the agent . . . nor the broker . . . nor . . . []WKFC[] heard anything further until January 24, 2017[,] when Heritage learned that a default judgment had been taken against [it.]" Compl. [1] ¶ 14. When asked by Heritage about the default, York initially said that it sent a letter denying coverage for the claims in the underlying lawsuit in September 2016. York said that "the certified letter was unclaimed and returned to [it, so] the certified copy was then sent [to Heritage via] regular mail" on October 12, 2016. *Id.* ¶ 21. York later "admitted" that "the disclaimer letter was sent out to Heritage . . . but it was sent regular mail and not certified mail on [September 9, 2016.]" *Id.* ¶ 28.

Aggrieved, Heritage filed this lawsuit on July 31, 2017, against Ironshore, York, and WKFC. It asserts claims for breach of the duty of good faith and fair dealing, fraud and negligent misrepresentation, breach of contract, and conspiracy arising out of the handling of the underlying lawsuit. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The matters raised in Defendants' motion have been fully briefed, and the Court has personal and subject-matter jurisdiction.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

Ordinarily, in considering a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). An exception to this rule exists for "matters of public record" of which the Court may take judicial notice. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). And "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, Defendants attached to their motion the insurance policy, which is part of the pleadings under *Causey*, and the complaint and default judgment in the underlying lawsuit, of which the Court may take judicial notice. And Heritage has submitted copies of the email correspondence referenced in the Complaint, which are also part of the pleadings under *Causey*. The documents submitted are properly before the Court on Defendants' Rule 12(b)(6) motion.

III. Analysis

Defendants assert that Ironshore had no duty to defend Heritage in the underlying litigation under the insurance policy and therefore they did not breach the contract or the duty of good faith and fair dealing. They argue that Heritage has not pleaded that it relied upon any false

3

statement, resulting in injury, such that its fraud claims fail as a matter of law. And they say Heritage's civil-conspiracy claim likewise provides no basis for liability. The Court will address the claims in turn.

A.  Breach of Contract and of the Duty of Good Faith and Fair Dealing

Defendants insist that Heritage's claims for breach of contract and of the duty of good faith and fair dealing fail because Ironshore had no duty to defend Heritage in the underlying lawsuit. "The general rule in Mississippi is that an insurer's duty to defend hinges on the allegations in the underlying complaint." *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998). "Accordingly, to determine whether an insurance company has a duty to defend its insured, the Court 'must look at the facts alleged in the complaint, together with the policy.'" *Leaf River Cellulose, LLC v. Mid-Continent Cas. Co.*, No. 2:11-CV-54-KS-MTP, 2012 WL 1906529, at *3 (S.D. Miss. May 25, 2012) (quoting *Auto. Ins. Co. v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011)). "Only if the pleadings state facts which bring the injury within the coverage of the policy is the insured required to defend." *Shelter Mut. Ins. Co. v. Brown*, 345 F. Supp. 2d 645, 648–49 (S.D. Miss. 2004). Importantly, the Court "look[s] 'not to the particular legal theories' pursued by the plaintiff, 'but to the allegedly tortious conduct underlying' the suit." *Evanston Ins. Co. v. Neshoba Cty. Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346 (S.D. Miss. 2006) (quoting *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005)).

In this case, the insurance policy obligated Ironshore to defend Heritage from any suit seeking "damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy [11-2] at 5. It made clear, though, that Ironshore "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which

4

this insurance does not apply." *Id.* Significantly, the policy contained an exclusion for claims involving an "organic pathogen":

> This insurance does not apply to:
>
> [] "Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of[]
>
> [a]ny "organic pathogen" . . . .
>
> . . . .
>
> "Organic pathogen" means any type of bacteria, virus, fungi, mold, mushroom, or mycotoxin, or their spores scent, or byproducts, or any reproductive body they produce.

*Id.* at 28.

Turning to Speed's complaint in the underlying action, it includes only two relevant factual paragraphs:

> During th[e] period of [her] residence [at the insured apartment complex,] Kate Speed was exposed to mold and hazardous substances and conditions on the subject premises that proximately caused her emotional and bodily injury.
>
> Despite numerous water leaks and growth of toxic mold and substances, the Defendants refused to properly repair or remediate the dangerous conditions[.]

Underlying Compl. [11-1] ¶¶ 7–8. Based on those averments, Speed then asserts three claims: (1) breach of the implied warranty of habitability; (2) negligence; and (3) a claim under Mississippi's Landlord-Tenant Act.

Heritage seems to concede that the policy excludes coverage for Speed's first and second claims, focusing instead on her claim under the Landlord-Tenant Act. *See* Pl.'s Mem. [14] at 6. But like her other claims, Speed bases the Landlord-Tenant Act claim on alleged exposure to mold. Underlying Compl. [11-1] ¶ 7. In fact, the first paragraph of the Landlord-Tenant Act claim expressly incorporates that very allegation. *See id.* ¶ 9. In any event, coverage turns on factual allegations not legal theories. *Evanston Ins. Co.*, 442 F. Supp. 2d at 346. So like the

5

claims Heritage conceded, the Landlord-Tenant Act claim plainly falls under the organic-pathogen exclusion. And because Ironshore had no duty to defend Heritage in the underlying litigation, the breach-of-contract claim premised on Ironshore's failure to defend must be dismissed.

Aside from the coverage issue, Heritage also says Defendants breached their duty to investigate. Citing cases arising in the first-party insurance context, Heritage argues that Defendants had "a clear duty . . . to promptly and adequately investigate an insured's claim before denying it," and that their failure to do so gives rise to liability for breach of the duty of good faith and fair dealing. Pl.'s Mem. [14] at 5; *see, e.g.*, *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1985) ("[A]n insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts.").

But in the context of a third-party insurance claim—like the one here—there is no duty to investigate beyond the allegations of the underlying complaint "unless some facts are presented that would make an investigation reasonable and necessary." Jeffrey Jackson, Mississippi Insurance Law and Practice § 11.6 (citing *Miss. Farm Bureau Cas. Ins. Co. v. Amerisure Ins. Co.*, No. 3:11-CV-706-CWR-FKB, 2013 WL 286364 (S.D. Miss. Jan. 24, 2013); *Leaf River Cellulose, LLC*, 2012 WL 1906529). As the Fifth Circuit noted in *American States Insurance Company v. Natchez Steam Laundry*, the general rule in Mississippi is that "an insurer can determine whether it has a duty to defend by comparing the complaint to the policy." 31 F.3d 551, 553 (5th Cir. 1998). Thus, Defendants conducted the only review the law requires, and Heritage does not allege the presence of any facts suggesting that further investigation was necessary. Defendants did not breach any duties to Heritage by failing to investigate.

Heritage does not stop there. It also says that Defendants failed to timely notify it that coverage was denied, thereby breaching the duty of good faith and fair dealing. Defendants counter that Heritage never pleaded such a factual theory, saying "Heritage alleged that York admitted that the denial of coverage letter was sent to Heritage[ via] regular mail and not certified mail." Defs.' Mem. [12] at 8 (citing Compl. [1] ¶ 28). But this response fails to consider the Complaint as a whole. In at least three places, Heritage accuses Defendants of "[f]ail[ing] to promptly and reasonably notify the insured of the claim decision or denial of defense." Compl. [1] ¶ 34(c); *see also id.* ¶ 36 ("York subsequently claimed that the denial was sent regular mail September 8, 2016[,] which was and remains a false statement."); *id.* ¶ 39 (alleging that Defendant "failed to provide timely notice to [Ironshore's] insured, plaintiff herein, that coverage was denied and no defense to the claims in the underlying litigation would be provided"). So the factual allegation Heritage relies upon is in the Complaint.

From that, Heritage says "Mississippi law (and basic common sense) require[] that an insurance company has a duty to tell the insured about an adverse coverage determination or a denial of defense when a claim is made under a policy." Pl.'s Mem. [14] at 6.[1] Heritage does not cite any legal authority for the source of this duty, so the Court turns to the general law on the duty of good faith and fair dealing.

> All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement. Good faith means the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. In contrast, bad faith requires a showing of more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity.

---

[1] Heritage does not allege that failure to notify it of the coverage denial breached any express term of the insurance policy or any other contract between the parties.

*Ravenstein v. Cmty. Tr. Bank*, 141 So. 3d 396, 403 (Miss. Ct. App. 2013) (internal quotation marks and citations omitted).

None of the parties address the extent to which the failure to provide a declination notice fits within this legal framework. And the Court is not inclined to delve too deeply into the legal issue without their input. Accepting the well-pleaded factual allegations of the Complaint as true, the Court concludes—at this time—that Heritage has stated a plausible claim for breach of the duty of good faith and fair dealing as to the alleged failure to notify it of the claim denial. The parties may revisit this claim at another stage in the litigation.[2]

Finally, in an effort to save its otherwise deficient contract-based claims, Heritage relies on the so-called "lying exception" under Mississippi law. The "lying exception" permits a bad-faith claim against an insurer to go forward where the insurer's defense to coverage "is based wholly on an issue of the truthfulness of the insurance company's witnesses." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 852 (Miss. 1984) (Robertson, J., concurring), *cited in Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 186 (Miss. 1994). Here, the defense to coverage had nothing to do with Defendants' alleged lies "that York provided a timely denial of coverage and defense to Heritage." Pl.'s Mem. [14] at 9. The defense to coverage was the organic-pathogen exclusion, which clearly applied. The "lying exception" is inapplicable.

---

[2] Defendants cite a handful of cases in which Mississippi courts upheld default judgments entered against insureds who claimed their insurance companies failed to take necessary steps to defend them. Defs.' Mem. [12] at 8–9 (citing *H&W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So. 2d 895 (Miss. 1987); *Pointer v. Huffman*, 509 So. 2d 870 (Miss. 1987); *Tippah Cty. v. Childers*, 21 So. 3d 658 (Miss. Ct. App. 2009)). But Defendants have not sufficiently explored why Heritage's failure to act would absolve Defendants of their legal duties.

B.  Misrepresentation-Based Claims

Heritage asserts claims for "actual fraud/intentional misrepresentation/negligent misrepresentation" against Defendants based on the changing stories they told Heritage about when and how they sent the claim-denial letter. Compl. [1] at 9 (capitalization altered).

To state a claim for negligent or intentional misrepresentation, the plaintiff must allege that the defendant made a misrepresentation of material fact and the plaintiff reasonably or justifiably relied on that misrepresentation to its detriment. *See Holland v. Peoples Bank & Tr. Co.*, 3 So. 3d 94, 100, 101 (Miss. 2008). Defendants say that, because the only misrepresentations alleged in the Complaint were all made *after* the default judgment was entered against Heritage, its misrepresentation claims fail for lack of reliance and resultant injury.

In the Complaint, Heritage describes the basis for its misrepresentation-based claims as follows:

> Defendant York represented that the claim and defense denial letter was provided in a timely manner and sent via certified mail to the plaintiff. York then represented to the plaintiff that the denial letter had been sent certified mail but was unclaimed by the plaintiff and had been returned to York. York then admitted that no certified mailing took place but alleged that the letter was sent "regular mail" on September 9, 2016. York alleged that it had no contact information for Heritage when the information was attached to the Summons York admitted was in its possession. These statements were false. These statements were material and York was aware of the falsity of the statements when made. York intended that the plaintiff act on these false statements and simply accept the representation that York had provided certified mail in a timely manner or that the plaintiff had failed to pick up the certified mail making it their "responsibility" or that timely notice was provided via "regular mail." The plaintiff had no ability to know that the statements of York were false. York represented that denial of the claim was sent via regular mail on September 9, 2016[,] which was and remains a false statement. York subsequently claimed that the denial was sent regular mail September 8, 2016[,] which was and remains a false statement. At all times, it was and remains the intent of York that the plaintiff rely on these false statements such that York can escape liability for its own acts and omissions. As a direct result of these false statements from York,

> the plaintiff has been forced to incur damages to protect itself including emergent actions and attorney fees and amounts paid to resolve the underlying litigation.

Compl. [1] ¶ 36. Defendants are clearly correct that any post-default representations cannot establish detrimental reliance that caused the default. And Heritage has not provided any legal authority suggesting that filing a lawsuit against the insurer constitutes detrimental reliance.

Heritage may recognize these obstacle, so in its response, it expanded the argument, saying that it "was entitled to rely upon the affirmative statements that the claim had been fully reported, assigned, set up and was being handled." Pl.'s Mem. [14] at 10. This apparently refers to the Acknowledgement of Assignment York sent Heritage on September 6, 2016. *See* Acknowledgement of Assignment [1-1]. But, even assuming Heritage's misrepresentation-based claims arose from the Acknowledgement of Assignment, that notice never stated that Defendants would provide a defense or coverage for the allegations in the underlying lawsuit. In other words, the representation was true. Additionally, Heritage does not aver in its Complaint that it detrimentally relied upon any statement in the Acknowledgement of Assignment. Heritage's misrepresentation-based claims fail as a matter of law.

### C. Civil Conspiracy

In its Complaint, Heritage alleges that Defendants "have colluded and conspired for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully which is the attempt to avoid responsibility for the acts and omissions as described herein." Compl. [1] ¶ 42. Defendants argue that the civil-conspiracy claim fails for lack of a facially plausible underlying tort. Heritage did not address the claim in its response, and the Court finds Defendants' arguments persuasive. *Cf. Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion to Dismiss [11] is denied in part without prejudice as to the failure-to-notify breach-of-the-duty-of-good-faith-and-fair-dealing claim. The motion is otherwise granted.

**SO ORDERED AND ADJUDGED** this the 22nd day of January, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE
